Ruth S. WELT, Plaintiff,

v.

Alvin ABRAMS, Defendant.

Alvin ABRAMS, Defendant/Third–
Party Plaintiff,

v.

Martin A. WELT, Third–Party Defendant.

No. 90 Civ. 0085 (RWS).

United States District Court,
S.D. New York.

Sept. 14, 1993.

Martin A. Welt and Ruth S. Welt, plaintiffs, pro se.

Warshaw Burstein Cohen Schlesinger & Kuh by Martin R. Lee, of counsel, New York City, for defendant.

## OPINION

SWEET, District Judge.

Plaintiff *pro se* Ruth Welt ("Ruth Welt"), wife of third party defendant Dr. Martin Welt, Ph.D. ("Martin Welt") has moved pursuant to Rule 56, Fed.R.Civ.P., for summary judgment on a promissory note made out to Martin Welt by defendant Alvin Abrams ("Abrams") and assigned by Martin Welt to Ruth Welt on October 24, 1989. Abrams has cross-moved for summary judgment against Ruth Welt with respect to assignment of the Note. For the reasons given below, the motion of Ruth Welt is denied and the motion of Abrams is granted and the complaint dismissed.

### Prior Proceedings

Martin Welt, a nuclear physicist formerly associated with the United States Atomic Energy Commission, founded Radiation Technology Incorporated (RTI) in 1968. RTI owned several irradiation facilities, including one in Rockaway, New Jersey (the "Rockaway Plant"). The Rockaway Plant was licensed by the U.S. Nuclear Regulatory Commission to use a radioactive byproduct, Cobalt–60, as part of its operations. A variety of safety mechanisms had been installed at the Rockaway Plant in order to prevent any person from coming into contact with radiation from the Cobalt–60. Proceedings before the Federal Nuclear Regulatory Commission (NRC) concerning these safety mechanisms led to a criminal action by the United States government against RTI and Martin Welt, suspension of RTI's license to operate the Rockaway plant starting in June, 1986, and a fine which the corporation paid.

As a result of these proceedings, Martin Welt ceased to be President and became a consultant to the company pursuant to a consulting contract he signed with RTI in the

summer of 1986. By letter dated August 13, 1986, the day after the NRC held a conference with the management of RTI, the NRC wrote to RTI to state that the first condition under which the NRC would be willing to renew RTI's license was that Martin Welt would not perform any service for RTI as an officer, employee or consultant.

On December 24, 1986, RTI stopped paying Martin Welt under his consulting contract, and in January, 1987, Martin Welt filed suit in New Jersey Superior Court for breach of contract. Presumably as part of arrangements to sever his relationship with RTI, Martin Welt then sold 483,835 shares of RTI stock to Abrams, a former underwriter of RTI, for $1,088,628.70, on February 12, 1987 in New York City. This amount apparently represented about half of the shares which Martin Welt then owned in RTI; at that time, at least another 27,000 shares were owned by his wife and some 50,000 were owned by his children. Martin Welt received $200,000 in cash and was given a promissory note (the "Note") by Abrams for the balance of $888,628.70. RTI's shares trade over the NASDAQ exchange.

RTI filed counterclaims against Martin Welt in the breach of contract suit in New Jersey, in February, 1987, alleging loss of customers and other damages to the company ultimately based on his actions, and began conducting an internal investigation of Martin Welt's activities. Martin Welt then began to transfer his property to other members of his family (the "Welt Group"); among these transactions were a transfer of 31,500 shares of RTI stock to his wife in April, 1988, and a transfer of the Note to her on October 24, 1989.

Ruth Welt then filed this action to collect on the Note in the Southern District of New York on January 5, 1990. Abrams counterclaimed alleging that Welt had concealed from him the extent to which Welt's activities had damaged both RTI's business and the value of its stock.

In the parallel New Jersey action, however, RTI alleged that certain of Martin Welt's transfers of his property, including the transfer of the Note, were fraudulent conveyances under New Jersey law. In an Opinion dated February 18, 1993, the Honorable Burrell Ives Humphreys agreed:

> It is inconceivable that a person of Dr. Welt's intelligence and scientific and business experience would not realize that he was facing enormous damage claims by RTI. His transfer of his property was to "protect" himself against that eventuality, to quiet his "fear" and to give his family "security". In other words, his purpose was to hinder, delay and defraud RTI in the collection of their damages.... This is a classic fraudulent conveyance case.... Welt's transfers are all invalid as against RTI.

*Welt v. RTI Technologies, Inc.*, 1306–87E, slip op. 11, 13–14 (N.J.Sup.Ct., Feb. 18, 1993). By Order filed April 1, 1993, Judge Humphreys stated that Ruth Welt had never had an interest in the Note and directed the Special Master in the New Jersey action, who has current possession of the Note, to continue to hold it until RTI could levy upon it to satisfy any judgments which might be awarded against it on its counterclaims against Martin Welt. By order dated May 13, 1993, Judge Humphreys denied Martin Welt's motion for reconsideration. At a hearing held June 11, 1993, Judge Humphreys determined that Martin Welt owed his former company RTI $1.7 million on its counterclaims against him.

Ruth Welt filed this motion for summary judgment on the Note on May 29th, and the papers were taken on submission on June 3rd. Abrams cross moved for summary judgment on June 9th, 1993. Late filed papers were accepted by the Court, and the motions were considered fully submitted on June 25th.

### Discussion

#### I. Standards for Rule 56

■ Rule 56(c), F.R.Civ.P., provides that summary judgment "shall be rendered forthwith the pleadings ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106

S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The Court should draw all reasonable inferences in favor of the nonmoving party, but only after determining that such inferences are reasonable, considering all the evidence presented. *Apex Oil Co. v. Di Mauro*, 822 F.2d 246, 252 (2d Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987).

## II. *Factual Issues Preclude Summary Judgment*

Ruth Welt has alleged that there are "only two issues" in this case: "whether the note was issued and whether Mr. Abrams defaulted on the note." She concedes that the counterclaim of fraud in the inducement is a defense closely tied to a state of mind and as such is usually inappropriate for summary judgment, and in fact alleges that Abrams, in alleging a defense of fraud, "is arguing the merits of his fraud case which should be the subject matter for trial." Her motion, she alleges, is "to simplify matters for trial" in establishing that the Note was validly issued.

As such, the motion must be denied. Abrams' contention that the Note was procured through fraud cannot properly be severed from the allegations concerning the validity of the Note. A promissory note procured through fraud in the inducement is not valid, and therefore it is inappropriate to determine the validity of the Note without determining the merits of Abrams' defense. Although fraud in the inducement is a personal defense and cannot be asserted against a holder in due course, Ruth Welt has not alleged such a status; instead of claiming that she took the Note without knowledge of any defenses, she seems to claim only that Abrams must pay the Note simply because he signed it. Moreover, Ruth Welt has not alleged that Abrams signed any waiver, either general or specific, of any of his defenses, *see e.g., Northwestern Nat. Ins. Co. v. Alberts*, 717 F.Supp. 148, 154 (S.D.N.Y.1989). Since Ruth Welt has alleged nothing which would serve to bar Abrams' personal defenses against payment of the Note, Abrams is entitled to assert the defense of fraud in the

inducement in this action. *See Union Bank of India v. Seven Seas Imports, Inc.*, 727 F.Supp. 125, 131 (S.D.N.Y.1989). Under these circumstances, the mere fact that the Note was issued and not paid hardly compels a finding that the Note was valid and ought to have been paid.

## III. *The Cross–Motion*

Abrams, in turn, has alleged that Ruth Welt does not have standing to bring this motion for summary judgment because the New Jersey Superior Court, in a related action between the same parties, has held that the transfer to Ruth Welt was a fraudulent conveyance void *ab initio*. The transfer is therefore a nullity under New Jersey law not just to RTI but to Abrams as well, for Abrams, like RTI, is a creditor of Martin Welt. If this Court gives preclusive effect to this decision, Ruth Welt does not have standing to bring this motion.

Because a putative plaintiff must have standing to sue under Article III of the United States Constitution, it is a threshold issue in all cases. *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir.1991). As a rule, unless the party whose standing is at issue has a " 'personal stake in the outcome of the controversy,' " the suit cannot meet the case or controversy requirement of the Constitution. *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)); *Shearson*, 944 F.2d at 118. The party must assert his or her own legal rights and interests, and cannot rest the claim to relief on the legal rights or interests of third parties, *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205. *See, e.g., Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (taxpayers lack standing to challenge specific tax law ruling); *Etuk v. Slattery*, 936 F.2d 1433 (2d Cir.1991) (lawful permanent resident aliens had standing to challenge immigration procedures). In the case at bar, this Court must determine that Ruth Welt has a legal interest in the Note in order to consider her claims for summary judgment

on it. *See Smith v. City of New York*, 74 Misc.2d 723, 344 N.Y.S.2d 799 (Sup.Ct. Kings Cty.1973) (exclusive nature of interest in negotiable instruments).

■ However, Ruth Welt's legal interest in the Note has already been raised and decided in the Superior Court of New Jersey, and the question for determining Abrams' motion for summary judgment, therefore, is whether this Court should give that decision preclusive effect.

28 U.S.C. § 1738 provides that:

[J]udicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of [the] State ... from which they are taken.

"This statute places upon federal courts the same burden as the Constitution's Full Faith and Credit clause places upon states courts," *Stone v. Williams*, 970 F.2d 1043, 1054 (2d Cir.1992), *cert. den.*, —— U.S. ——, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993), *i.e.*, to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the states from which the judgments emerged. *Id.* See *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Underwriters Nat'l. Assur. Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704 & n. 9, 102 S.Ct. 1357, 1365 & n. 9, 71 L.Ed.2d 558 (1982). Such findings of a state court are to be given the same preclusive effect in federal court as they would in that state's court. *See also Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.*, 922 F.2d 164 (2d Cir. 1991) (requiring New York district court to give full faith and credit to Alabama state court judgment). However, a state court judgment must be the final determination of the "same claim" or the "same issue" under the principles of *res judicata* or collateral estoppel in order to bar its litigation in federal court.

■ Claims previously raised and determined in a prior litigation cannot be relitigated in a subsequent proceeding, for such findings are *res judicata*, *Pittman v. LaFontaine*, 756 F.Supp. 834, 840–41 (D.C.N.J. 1991). Generally, the doctrine of *res judicata* bars relitigation of the same claims between the same parties after the matter has once been resolved by a court of competent jurisdiction. *Pompano–Windy City Partners, Ltd. v. Bear, Stearns & Co., Inc.*, Fed. Sec.L.Rep. (CCH) ¶ 97,366, 1993 WL 42786 (S.D.N.Y. Feb. 17, 1993) (granting preclusive effect to arbitration); *Stone*, 970 F.2d at 1054 (granting preclusive effect to decision of Alabama Supreme Court); *Ruiz v. Comm'r of Dep't of Transp. of New York*, 858 F.2d 898, 902 (2d Cir.1988). *Res judicata* also precludes litigation of all claims that could have been raised in the earlier proceeding, whether or not they were actually raised and litigated, *Greenberg v. Board of Governors of the Federal Reserve System*, 968 F.2d 164, 168 (2d Cir.1992); *Harborside Refrigerated Services, Inc. v. Vogel*, 959 F.2d 368, 372 (2d Cir.1992).

■ Collateral estoppel (issue preclusion) comes into play when the subsequent action is "upon a different claim or demand," *United States v. Moser*, 266 U.S. 236, 241, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924); *Stone*, 970 F.2d at 1054. At that point, "the inquiry is whether the point of question presented for determination in the subsequent action is the same as that litigated and determined in the original action," *Stone*, 970 F.2d at 1054, quoting *Moser*, 266 U.S. at 241, 45 S.Ct. at 67.

In essence, the functional difference between claim preclusion and issue preclusion is that while only the former can operate to prevent litigation of a matter that has never been decided, both prevent relitigation of an issue of fact or law that has already been necessarily decided as part of a valid, final judgment.

*Id.* A state court judgment is considered final for purposes of issue preclusion if the conclusion in question is procedurally definite. *Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2d Cir.), (Friendly, J.) (collateral estoppel does not require a judgment which ends the litigation; once liability is established, the mere fact that damages have not yet been fixed does not deprive the liability de-

termination of any preclusive effect it might otherwise have), *cert denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). The decision in *Welt v. RTI* is final in its determination that Ruth Welt has never had any interest in the Note, and lacks standing to sue on it. Since relitigation of this issue is precluded by the judgment in the New Jersey court, Ruth Welt's motion is therefore denied for lack of standing.

Abrams' counter-motion for judgment on the grounds that the decision of the New Jersey court is *res judicata* is granted, and Ruth Welt enjoys no rights or interests in the Note because this issue has already been decided between these two parties by a court of competent jurisdiction. However, this does not result in the dismissal of the action, for the third party claim of Abrams against Martin Welt is still before this court.

### Conclusion

For the reasons given above, Ruth Welt's motion for summary judgment on the validity of the Note is denied. Abrams' motion for summary judgment to dismiss Ruth Welt's complaint is granted, and the parties shall be realigned in accordance with this opinion.

Submit order on notice.

It is so ordered.