In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 07-2020, 07-2210

ALLAN BLOCK CORPORATION,

*Plaintiff-Appellee, Cross-Appellant*,

*v.*

COUNTY MATERIALS CORPORATION,

*Defendant-Appellant, Cross-Appellee*.

———————

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 06 C 476—**John C. Shabaz**, *Judge*.

———————

ARGUED NOVEMBER 5, 2007—DECIDED JANUARY 14, 2008

———————

Before POSNER, EVANS, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*.   In two contracts, one in 1993 and the other in 1997, Allan Block licensed County Materials to manufacture Allan Block's patented concrete blocks. The contracts forbade County Materials to manufacture competing concrete blocks (with certain exceptions) for as long as the contract was in effect and for 18 months after it was terminated. But when the licenses were terminated (both at the same time), County Materials decided not to honor the 18-month post-termination

covenants not to compete. Its excuse was that enforcement would be patent misuse, and it filed a suit in a federal district court in Wisconsin, basing federal jurisdiction on diversity of citizenship, for a declaration to that effect. Recently another panel of this court held that there was no patent misuse, and so affirmed judgment for Allan Block. *County Materials Corp. v. Allan Block Corp.*, 502 F.3d 730 (7th Cir. 2007). Meanwhile, however, Allan Block had filed a mirror-image suit, also basing jurisdiction on diversity, against County Materials, charging breach of both the 1993 and 1997 licensing contracts. That case—the one giving rise to the present appeal—went to trial, and a jury awarded Allan Block $290,000 in damages, and other relief. County Materials appeals. Allan Block cross-appeals, seeking additional relief.

Federal law is agreed to cover the issue of res judicata, Minnesota law the contract issues. As an original matter, Wisconsin law rather than federal law should govern the issue of res judicata because the judgment that is claimed to operate as res judicata in this suit was rendered in a diversity suit. The Supreme Court held in *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001), that while federal common law determines the preclusive effect of a judgment in a federal suit, even if it is a diversity suit and thus based on a claim under state law, the federal court should in a diversity case adopt as the federal common law rule of res judicata the rule of the state in which the court is located, which in this case is Wisconsin. It is true that the dispositive issue in the previous diversity suit was federal (patent misuse), but it was a defense to a claim of breach of a patent licensing agreement (County Materials' license to manufacture Allan Block's patented blocks), a

claim that arose under state law. It would complicate matters unduly to base the rule of preclusion on the existence of a federal defense (the defense of patent misuse that County Materials was trying to establish by seeking declaratory relief, in order to prevent Allan Block from enforcing the post-termination covenants). In any event, parties are free to choose (within reason) whatever body of law they want to govern a litigation.

County Materials' main argument is that Allan Block's claim of breach of contract is a compulsory counterclaim to the claim of patent misuse and therefore had to be filed as a counterclaim in the declaratory judgment suit or be forever forfeited. It is indeed (for the most part— a qualification explained later) a compulsory counter- claim, defined in Fed. R. Civ. P. 13(a) as "any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Both County Materials' claim of patent misuse and Allan Block's claim of breach of contract arose out of the same transaction, namely County Materials' refusal to honor the post-termination covenants not to compete.

Failing to file a compulsory counterclaim does normally preclude its being made the subject of another lawsuit. The doctrine of res judicata bars a person from splitting his claim between two suits, *Restatement (Second) of Judgments* §§ 24, 25 and comment b (1982), and Allan Block's claim that the covenants not to compete are enforceable and that County Materials has therefore broken them is the same claim whether it is interposed as a defense in a suit by the covenanter or made the basis of a separate suit for breach of the covenants. Charles Alan Wright, "Estoppel by Rule: The Compulsory Counterclaim Under

Modern Pleading," 39 *Iowa L. Rev.* 255, 281-83 (1953). And the fact that the earlier suit (County Materials') involved only one of the two contracts and the later suit both would not allow Allan Block to sue even on the 1997 contract (assuming the judgment in the first suit had res judicata effect), given its intimate connection to the first contract and the identity of the covenants not to compete in both contracts. The two contracts were parts of the same commercial relation, properly classified as a single "transaction" for purposes of res judicata in order to prevent piecemeal litigation. *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1336 (10th Cir. 1988); *Weston Funding Corp. v. Lafayette Towers, Inc.*, 550 F.2d 710, 712 (2d Cir. 1977). Even more clearly, the post-termination covenants, though separable from the license contracts because effective only upon termination of the latter, are parts of the commercial relation established by them.

But there is an exception to res judicata for cases in which the only relief sought in the first suit is a declaratory judgment. E.g., *Stericycle, Inc. v. City of Delavan*, 120 F.3d 657, 658-60 (7th Cir. 1997) (Wisconsin law); *Smith v. City of Chicago*, 820 F.2d 916, 919 (7th Cir. 1987); *Harborside Refrigerated Services, Inc. v. Vogel*, 959 F.2d 368, 372-73 (2d Cir. 1992); *Horn & Hardart Co. v. National Rail Passenger Corp.*, 843 F.2d 546, 549 (D.C. Cir. 1988); *Restatement, supra*, § 33 and comment c. Giving such a judgment preclusive effect would stymie a plaintiff, who, having obtained a declaratory judgment, later sought—because the defendant thumbed his nose at the declaration—injunctive relief, an authorized and common sequel to a declaratory judgment. See Declaratory Judgment Act, 28 U.S.C. § 2202; *Stericycle, Inc. v. City of Delavan*, *supra*, 120 F.3d at 658-

659. Prudence would therefore require him (if a declaratory judgment had preclusive effect) to ask for injunctive relief in his first suit, rather than just for declaratory relief—which would usually make obtaining declaratory relief pointless. Of course if specific issues are resolved in the declaratory judgment action, their resolution will bind the plaintiff by virtue of the doctrine of collateral estoppel should he later seek an injunction or damages. 18A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4446, pp. 318-20 (2d ed. 1990). But that is not a factor in this litigation.

This concern that we have just articulated with giving res judicata effect to a declaratory judgment is absent when the question is whether the defendant in the declaratory judgment action who fails to file a counterclaim that arises from the same transaction is barred by res judicata from filing a separate suit, because a defendant would not be wanting to reserve the right to seek further relief. Nevertheless, he is not barred. *Harborside Refrigerated Services, Inc. v. Vogel, supra*, 959 F.2d at 373; *Restatement, supra,* § 33, comment c. The reason is practical: if the defendant had to bring his claims against the plaintiff as counterclaims in the declaratory judgment action, declaratory judgments would become devices for thwarting the choice of forum by the defendant, even though, in many declaratory judgment suits, including the one brought by County Materials, the plaintiff is seeking declaratory relief in order to defeat preemptively a claim by the defendant.

County Materials acknowledges the declaratory judgment exception to res judicata, but considers it a "judge-made" rule that must yield to Rule 13(a), the compulsory-counterclaim rule. But Rule 13(a) is not independent of

the "judge-made" doctrine of res judicata. It is in effect a procedural implementation of that doctrine. Wright, *supra*; Kevin M. Clermont, "Common-Law Compulsory Counter-claim Rule: Creating Effective and Elegant Res Judicata Doctrine," 79 *Notre Dame L. Rev.* 1745 (2004); see *Hartford Accident & Indemnity Co. v. Sullivan*, 846 F.2d 377, 382 (7th Cir. 1988); *Libbey-Owens-Ford Glass Co. v. Sylvania Industrial Corp.*, 154 F.2d 814, 818 (2d Cir. 1946) (Frank, J., dissenting). All Rule 13(a) does is command that certain claims be pleaded as counterclaims. It does not specify the conse-quences of failing to do so. Those consequences are given by the doctrine of res judicata, including its excep-tions. To invoke Rule 13(a) as a bar to basing a suit on a claim that might be thought a compulsory counterclaim in a declaratory judgment action would bring about what refusing to apply res judicata to defendants in such actions is designed to prevent: forcing the defendant's claims to be litigated as counterclaims in such an action.

Against this conclusion, however, can be cited *Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935 (Fed. Cir. 2003), which holds that the defendant in a suit to declare his patent invalid must counterclaim for damages for infringement of the patent or lose his claim for such damages. The opinion relies on a literal interpretation of Rule 13(a): the claim for infringement arises out of the same occurrence—namely the plaintiff's alleged infringement—as the plaintiff's claim that the patent is invalid; and the rule itself, as we know, con-tains no express exception for declaratory judgments. We reject the reasoning of *Polymer*, but perhaps the deci-sion itself can be justified. A suit to declare a patent invalid is not a precursor to a request for further relief, at least if the plaintiff prevails, for then the patent ceases to be an obstacle to his making and selling the allegedly

infringing product; should the defendant sue him for infringement, the declaratory judgment would provide a complete defense. There is no practical difference, therefore, between such a judgment and an injunction against enforcing the patent, and so the rationale for the declaratory judgment exception fails. This is consistent with an exception to the exception: a plaintiff who joins his request for a declaratory judgment with a request for an injunction or damages cannot avoid the bar of res judicata should he later seek additional such relief. *Stericycle, Inc. v. City of Delavan*, *supra*, 120 F.3d at 659-60; *Smith v. City of Chicago*, *supra*, 820 F.2d at 919; *Minneapolis Auto Parts Co. v. City of Minneapolis*, 739 F.2d 408 (8th Cir. 1984). But County Materials did not seek additional relief in its declaratory judgment suit.

Now it is true that a plaintiff who *loses* his suit to declare the defendant's patent invalid may well be faced with a claim for damages; but often he will not be, as he may have refrained from selling his product until the patent's validity was determined. In the case of pharmaceutical patents—a particularly rich source of patent litigation—a suit for infringement or conversely for a declaration of invalidity frequently precedes any sales of the allegedly infringing drug, because the mere filing of an application with the Food and Drug Administration for approval to sell a drug seemingly patented by someone else is deemed an infringement of that patent. 35 U.S.C. § 271(e)(2).

Having disposed at last of the question of preclusion we can turn to the other issues presented by these appeals—issues of contract law and remedies and of attorneys' fees. The license contracts permit either party to terminate, without thereby being guilty of a breach of contract, either for any reason, or no reason, upon

notice. But if a party defaults and the other party seeks to terminate the contract because of the default, he has to give the first party an opportunity to cure the default. Allan Block terminated the contracts upon notice rather than on the basis of a default, and the termination took effect in August 2005 and so the 18-month post-termination covenants not to compete ran from that date. This suit was filed a year later and the judgment awarding Allan Block $290,000 in damages was entered in January 2007. As part of the judgment, the judge extended the covenants not to compete (which had expired almost a year earlier) by enjoining County Materials from competing with Allan Block for another seven months. Covenants not to compete often provide that they will be automatically extended for any period during which one side is in violation, but the covenants in this case do not contain any such "auto-extender" provision.

County Materials asks us to vacate the injunction. That is a very strange request, since the injunction expired by its terms in July 2006, so that there is nothing to vacate. But the issue of injunctive relief is not moot, because Allan Block's cross-appeal asks us to order the injunction extended (or rather re-imposed) for another 11 months, for a total of 18 months, the length of the post-termination covenants not to compete, since County Materials had refused to abide by them.

County Materials argues that Allan Block has no right to enforce the covenants in any way, shape, or form, because it failed to issue a notice of default and give County Materials an opportunity to cure the default. The argument is all wet. Each of the license contracts defines a default as a breach of the contract. The contract's post-termination covenant not to compete, though it imposes enforceable contractual obligations on the covenanter, is

not the original contract. The original contracts were terminated—a condition precedent, obviously, of the post-termination covenants' coming alive. Such a trailing condition is common. A party to a contract might agree that in the event it was terminated he would not disclose any of the other party's trade secrets that he might have learned while performing his side of the contract. That agreement would not be subject to the procedural and remedial provisions of the original contract. *B & Y Metal Painting, Inc. v. Ball*, 279 N.W.2d 813 (Minn. 1979); *American Family Mutual Ins. Co. v. Roth*, 485 F.3d 930, 933 (7th Cir. 2007); *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 607 (7th Cir. 1993) (en banc). In particular, if a party violates a post-termination covenant not to compete, the covenantee doesn't want, and can't be presumed in the absence of language in the covenant itself to agree to, the covenanter's having a grace period in which to attempt to cure his violation.

So Allan Block was entitled to relief for breach of the covenants—but not for an extension of them after they expired. It contracted for freedom from County Materials' competition for only 18 months after contract termination, and that 18 months expired last February. Of course it could sue for any damages it sustained from a breach of the covenants (though the breach would have to occur during the period in which the covenants were in effect); and if a damages remedy was inadequate (but not other-wise, *Minnesota Best Maid Cookie Co., Inc. v. Flour Pot Cookie Co.*, 412 N.W.2d 380 (Minn. App. 1987)), it could get an injunction. *Cherne Industries, Inc. v. Grounds & Associates, Inc.*, 278 N.W.2d 81, 93 (Minn. 1979); *American Eutectic Welding Alloys Sales Co. v. Rodriguez*, 480 F.2d 223, 229 (1st Cir. 1973). The injunction would not be an extension of the

post-termination covenants, although it would have the same effect. It would be premised on the inadequacy of the damages remedy rather than on a desire to change the contracts to extend the life of the covenants. In contrast, were the damages remedy adequate and the equitable basis for injunctive relief therefore missing, an injunction that extended the period of a covenant not to compete would be an extension of the covenant and thus a revision of the parties' contract, which is definite that Allan Block is entitled to protection from County Materials' competition for only 18 months after contract termination.

Allan Block did sue for damages for breach of the covenants, even though the trial took place only two months before they expired and there is no indication that something happened in that last two months to harm the firm. The fact that a jury awards zero damages does not mean that damages could not be calculated and so could not provide an adequate remedy; it could just mean that the plaintiff was not injured. To allow a plaintiff to base a claim for an injunction on an *adverse* jury verdict would be topsy-turvy. See *In re Silicone Implant Insurance Coverage Litigation*, 652 N.W.2d 46, 73-74 (Minn. App. 2002), reversed in part on other grounds, 667 N.W.2d 405 (Minn. 2003). There is, though, nothing to prevent a plaintiff from seeking both damages and injunctive relief in the same case and trying to prove that his failure to obtain damages was due not to his failure to prove injury but rather to the difficulty of quantifying the damages resulting from the injury. But the district judge described the injunction he issued as an extension of the post-termination covenant period. He seems to have thought that he had discretion to extend it without making the findings required to justify an injunction. He

was mistaken; and besides, Allan Block failed to show that its damages remedy was inadequate. The jury awarded damages for County Materials' violation of the pretermination covenants (which were identical to the post-termination ones except of course for the dates), and there is nothing to suggest that any greater difficulty of computation attended the claim for damages for violation of the post-termination covenants. The best interpretation of the jury award of zero damages, therefore, is that Allan Block failed to prove that it sustained any post-termination damages, and that determination bound the judge, and so he should not have extended the covenants.

County Materials complains that the evidence did not justify the jury's awarding Allan Block $290,000 in damages for breach of the original contracts. It contends that Allan Block could not sue on the basis of a violation of the contracts without giving County Materials a chance to cure the violation. The contention misconceives the function of the cure provision. The contracts provided as we said two modes of termination: notice, which had to be given 120 days before termination could take effect, and default, a ground for immediate termination unless the default was cured within 10 days. A declaration of default is a condition precedent not to suing for a breach of contract but to being authorized to terminate the contract immediately without liability to the other party. *Mor-Cor Packaging Products, Inc. v. Innovative Packaging Corp.*, 328 F.3d 331, 333 (7th Cir. 2003); *Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1571 (11th Cir. 1987).

County Materials further argues that there is no proof that Allan Block sustained any damages. The breaches of the pretermination covenants not to compete consisted

of selling concrete blocks that were directly competitive with the Allan Block concrete blocks that County Materials was authorized to produce under the licenses. Allan Block did not want County Materials to produce in effect duplicates of Allan Block's concrete blocks without paying license fees (royalties), and the $290,000 in damages that the jury awarded was the jury's estimate of the fees Allan Block would have received had County Materials honored the contract. It was a rough estimate, rather weakly supported, but there was evidence enough to require us to uphold the verdict. The figure of $290,000 was the application of the contractually agreed-upon royalty rate to County Materials' sale of duplicates, that is, of concrete blocks so like Allan Block's that the sale violated the contract. County Materials argues that if it hadn't sold the duplicates, maybe its customers would have bought some other line of concrete blocks. That is possible. But since the closest substitute for the infringing blocks was Allan Block's blocks, probably that is what customers would have chosen had the duplicates not been offered; and it is a probability sufficient to sustain an award of lost license fees. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1157-58 (6th Cir. 1978); cf. *B & Y Metal Painting, Inc. v. Ball*, *supra*, 279 N.W.2d at 816-17.

Allan Block complains that it was not allowed to put on its full damages case, and this turns out to be true. Let us not forget Rule 13(a). The district judge actually agreed with County Materials that compulsory counterclaims must be filed in declaratory judgment suits, but allowed Allan Block to seek damages with respect to those violations of the contract that it did not learn about until after the time for filing such counterclaims had elapsed. For

rather obvious reasons, Rule 13(a) does not require the defendant to file as a compulsory counterclaim a claim that hasn't accrued yet, *Burlington Northern R.R. v. Strong*, 907 F.2d 707, 712 (7th Cir. 1990); *Pike v. Freeman*, 266 F.3d 78, 92 n. 17 (2d Cir. 2001); *Harborside Refrigerated Services, Inc. v. Vogel*, *supra*, 959 F.2d at 373; *Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1080 (5th Cir. 1984), either because it has not yet come into being or, though it has, the plaintiff could not have discovered it.

But that leaves the claims, relating to two lines of concrete block made by County Materials in violation of the contract, that, since they were known to Allan Block when County Materials filed its declaratory judgment action, had to be—the district judge mistakenly believed—filed as compulsory counterclaims. So the judge did not let Allan Block seek damages for those claims, and it is entitled to do so on remand.

The last issue is Allan Block's claim for attorney's fees, which the district judge rejected. The contract provided that "in case of any default by [County Materials] as specified herein, [County Materials] shall pay all of [Allan Block's] costs of collecting any sums due to [Allan Block], including . . . the lesser of 15% or the maximum interest rate or rates charged permitted by law." This is a typical collection provision, not an attorney's-fee-shifting provision. Compare *Material Movers, Inc. v. Hill*, 316 N.W.2d 13, 18-19 (Minn. 1982); *Erlandson Implement, Inc. v. First State Bank of Brownsdale*, 400 N.W.2d 421, 427 (Minn. App. 1987), with *Yim K. Cheung v. Wing Ki Wu*, 919 A.2d 619, 625 (Me. 2007); *Pearson v. Sigmund*, 503 P.2d 702, 706 (Ore. 1972); *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 757 N.E.2d 1271 (Ill. App. 2001). If the licensee fails to pay the royalties due under the license, forcing the licensor to

bring a collection proceeding, the licensor is entitled to recover the expense of the proceeding, including the loss of the time value of money. The present case is not a collection case, but a suit for damages based on the licensee's violating a provision of the licenses unrelated to the payment of the license fees, namely a provision limiting his right to produce goods competing with the licensed goods. The result is a loss of royalties that the licensor would have earned had the licensee abided by the licenses, but it is not a loss that is due to the licensee's refusing to pay royalties on the sale of the licensed goods.

To summarize, the award of damages is affirmed, and so is the denial of all other relief sought by Allan Block with the exception of the refusal to allow it to prove damages with regard to the two claims that the judge kept from the jury; as to those, the judgment is vacated and the case remanded for a trial on damages limited to those claims.

We trust, though, that we have provided enough guidance to enable this suit to be settled without further proceedings. The remaining stakes are small, and it is time the war between these pertinacious antagonists was brought to a peaceful end.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*