In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-3257

FREDERICK V. GREENE,

*Plaintiff-Appellant,*

*v.*

UNITED STATES DEPARTMENT OF EDUCATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division at Lafayette.
No. 4:10-cv-00019 — **Joseph S. Van Bokkelen**, *Judge.*

ARGUED OCTOBER 8, 2014 — DECIDED OCTOBER 27, 2014

Before POSNER, FLAUM, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* This appeal requires us to decide what is needed to make a counterclaim compulsory. The plaintiff, Frederick Greene, appeals from a judgment directing him to repay his student loan debt to the federal Department of Education. The judgment is based on a counterclaim filed by the Department to Greene's complaint, which sought to enjoin the Department from collecting his student debt by garnishment of his wages or any other measure. The

judge ruled that the Department's counterclaim seeking a judgment ordering Greene to repay the debt was not barred, either as a compulsory counterclaim in a previous litigation or by res judicata or collateral estoppel.

In 2005 Greene and his wife had filed for bankruptcy under Chapter 7 of the Bankruptcy Code and obtained a discharge from all their debts except federal student loan debt of some $207,000. As part of the bankruptcy case they sought an order that the Department of Education cancel their debt on the ground that having to repay it would inflict undue hardship on them. This was denied and the Greenes appealed, claiming that their debt should be discharged among other reasons "because of undue hardship. See U.S.C. § 523(a)(8). Specifically, the Greenes claimed that (1) the statute of limitations prohibited collection of their loans, (2) penalties and interest on the loans were caused by the DOE's negligence, and (3) the loans should be discharged as reparations for slavery and discrimination." *In re Greene*, 310 F. App'x 17, 19 (7th Cir. 2009). We rejected the undue hardship defense on the ground that "the Greenes initiated this case and the DOE has not counterclaimed or sought any judgment with respect to the student debt. Until the DOE attempts to collect the debt, there is no actual controversy presented for decision." *Id*.

In 2010 the Department began to garnish Greene's wages (we don't know whether the Department has attempted to collect the student debt of Greene's wife), giving rise to his present suit and to the Department's counterclaim, on which judgment was entered in its favor.

"A proceeding [in bankruptcy court] to determine the dischargeability of a debt" is an adversary proceeding.

Bankr. R. 7001(6). Bankruptcy Rule 7013 makes Rule 13 of the Federal Rules of Civil Procedure applicable to such proceedings. Rule 13(a)(1) provides that "a pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." The "transaction or occurrence" in question was the Greenes' failure to repay the student loans, and it was also the basis of the counterclaim by the Department of Education in the present case. But to interpret Rule 13(a)(1)(A) literally and say that therefore the Department should have sought repayment by filing a counterclaim in the adversary proceeding and having failed to do so is barred from seeking repayment as a counterclaimant in this suit would have bad consequences. Greene initiated his adversary proceeding in 2005, and the government might have had realistic hopes of obtaining repayment of the loans without further litigation, whether by garnishment or because with the discharge of their other debts the Greenes might be able to pay back their student loans without undergoing undue hardship. In light of these possibilities the Department's seeking affirmative relief in the adversary proceeding—an order that the Greenes repay the loans—might well have been premature. It isn't true that any counterclaim that *ultimately* arises out of the same transaction or occurrence as the other side's claim must be filed or lost. That could allow an infinite regress.

The reasons for making some counterclaims compulsory are to prevent harassment by the filing of repeated claims by defendants and to avoid duplicative litigation. *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994); *Burlington Northern Railroad Co. v. Strong*, 907 F.2d 707, 710 (7th Cir. 1990); *Transamerica*

*Occidental Life Ins. Co. v. Aviation Office of America, Inc.*, 292
F.3d 384, 389–90 (3d Cir. 2002); *Adam v. Jacobs*, 950 F.2d 89, 93
(2d Cir. 1991). Understanding that to be the purpose of the
concept of the compulsory counterclaim, and noting its close
relation to the doctrine of res judicata, which like the com-
pulsory-counterclaim rule seeks to avoid duplicative litiga-
tion, *Matrix IV, Inc. v. American National Bank & Trust Co. of
Chicago*, 649 F.3d 539, 547 (7th Cir. 2011); *Allan Block Corp. v.
County Materials Corp.*, 512 F.3d 912, 915–17 (7th Cir. 2008),
provides clearer guidance to decision than vague words like
"transaction" and "occurrence."

Had the government filed a counterclaim in the adver-
sary proceeding, seeking repayment of the Greenes' student
loans—as it could have done—and had lost, it could not
have refiled its claim as a counterclaim in the present suit.
*Adams v. City of Indianapolis*, 742 F.3d 720, 735–36 (7th Cir.
2014). That would have been harassment. But the govern-
ment had sound reasons for holding off from seeking af-
firmative relief in the adversary proceeding. Better to block
discharge of Greene's student loan debt, and thus reserve
the right to sue later to collect the money owed it, than to try
to draw water from a stone. So far as appears, the Greenes
had (as suggested by their being allowed to discharge most
of their debts) little in the way of assets on which the gov-
ernment could have levied in 2005. The government could
and did pursue other remedies, such as garnishment, which
are simpler and cheaper than suing; freed of their other
debts the Greenes might have been able to begin, at least, to
repay their student debt.

Moreover, what Greene owed on his student loan (in the
absence of a successful defense of undue hardship) was a

different issue from whether making him pay what he owed would impose an undue hardship. The criteria of undue hardship are complex. See, e.g., *Krieger v. Educational Credit Management Corp.*, 713 F.3d 882, 883 (7th Cir. 2013); *United States v. Petroff-Kline*, 557 F.3d 285, 289–90 (6th Cir. 2009). The size of the debt is relevant—the larger it is, the more likely that imposing full liability on the debtor will produce an undue hardship—but calculating the debt involves a different factual inquiry from whether the debt so calculated is crushing. The government's claim for repayment and Greene's quest for cancellation of the debt by reason of undue hardship had a common origin, namely the student loans (which dated back to 1987), but it was a remote common origin.

We therefore agree with the district court that the Department's counterclaim is not barred. As for Greene's alternative grounds for barring the Department's claim for repayment of his student loans—res judicata and collateral estoppel—they fall with his compulsory-counterclaim argument. The "compulsion" of a compulsory counterclaim is a procedural implementation of the doctrine of res judicata. *Allan Block Corp. v. County Materials Corp.*, 512 F.3d 912, 916–17 (7th Cir. 2008). It forbids the splitting of a claim, and that didn't happen. Nor was any judicial determination made in the adversary proceeding that would bar the Department's claim. See, e.g., *Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008); *Stoebner v. Parry, Murray, Ward & Moxley*, 91 F.3d 1091, 1094 (8th Cir. 1996).

AFFIRMED.