# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40682

United States Court of Appeals
Fif h Circuit

**FILED**
June 2, 2017

Lyle W. Cayce
Clerk

ASARCO, L.L.C., a Delaware Corporation; ASARCO MASTER, INCORPORATED, a Delaware Corporation,

Plaintiffs - Appellees

v.

MONTANA RESOURCES, INCORPORATED, a Montana corporation; MONTANA RESOURCES, L.L.P., a Montana limited liability partnership,

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

ASARCO, L.L.C., through an affiliate, became partners in a Montana copper mine with Montana Resources, Inc. (MRI). Because of financial troubles in the early 2000s, ASARCO was unable to meet cash calls the partnership required. When it failed to contribute on four occasions, MRI covered ASARCO's portion. But this was not an act of benevolence. By covering its partner's cash calls, MRI diluted ASARCO's interest in the partnership from 49.9% to nothing.

About eight years after it lost its interest in the mine, ASARCO sent a letter invoking a clause in the partnership agreement that discusses a right to

reinstatement.  Surprisingly, the clause contains no time limit.  In seeking reinstatement, ASARCO offered to pay MRI the full amount of the missed cash calls plus interest.  MRI refused to bring ASARCO back into the partnership.  ASARCO filed this lawsuit challenging that refusal.

ASARCO's suit is complicated by a significant legal proceeding that took place after it missed the cash calls but before it sought reinstatement.  Fiscal problems—likely the same that prevented it from making the partnership contributions—resulted in ASARCO filing Chapter 11 bankruptcy.  MRI contends that two of ASARCO's decisions during that bankruptcy prevent it from now suing for reinstatement.   First, it contends that an adversary proceeding the parties litigated has preclusive effect on the reinstatement claim.  Second, it contends that ASARCO's alleged failure to disclose the potential partnership interest to the bankruptcy court estops it from now pursuing that interest.  In this interlocutory appeal, we agree with the district court that neither of these arguments presents an obstacle to ASARCO's suit.

**I.**

An ASARCO affiliate[1] and MRI formed a mining partnership called Montana Resources in 1989.  The partnership agreement provided that if a partner failed to pay a cash call within thirty days, that partner fell into default.  The nondefaulting party could cover the deficit, but the defaulting partner's share would dilute by 1% for every $100,000 it failed to contribute.  According to ASARCO, section 12.02 of the agreement allows for reinstatement through the following provision: "[T]he defaulting partner may cure such

---

[1] The ASARCO affiliate involved was AR Montana, which at the time was a special-purpose subsidiary of ASARCO.  AR Montana would later merge into ASARCO Master Inc., another ASARCO affiliate.  For ease of reference, we refer to ASARCO and its affiliates in this suit as ASARCO and MRI and its affiliates as MRI, unless the identities of the specific entities makes a difference.

default by contributing all amounts owed, plus interest at the Overdue Rate, to the non-defaulting partner and the Partnership, which repayment shall constitute reinstatement."

During a fourteen month period starting in 2002, the affiliate missed four cash calls totaling more than $5 million. MRI covered all of them, which resulted in a reduction in the affiliate's interest from 49.9% to 25.3%, to 3.9%, to 1.2%, and finally to 0%. At that time, MRI purported to dissociate the affiliate from Montana Resources.

In 2005, ASARCO and its affiliates filed for bankruptcy. As part of those proceedings, MRI filed Proofs of Claim against ASARCO to recover contingent environmental liability incurred by the partnership prior to ASARCO's bankruptcy. ASARCO responded by initiating an adversary proceeding. ASARCO alleged fraudulent transfer, breach of contract, and improper expulsion relating to its affiliate's dilution and purported dissociation from the partnership. The original complaint also alleged that ASARCO had a right to reinstatement after dilution. As a remedy, that complaint sought (1) a declaration that ASARCO had a right to reinstatement if it cured its default, and (2) monetary damages for income that ASARCO would have received had it not been improperly diluted. ASARCO later amended its complaint, dropping the declaratory judgment claim without prejudice. The other claims were dismissed with prejudice pursuant to an agreement between the parties, and shortly after the underlying bankruptcy concluded. The bankruptcy was a remarkable success: the plan offered full payment to all creditors.

With its newfound solvency, ASARCO tried to get back its interest in the mine, as the mine was doing well. Two years after the bankruptcy plan was confirmed, ASARCO sent MRI a letter that tendered the full cure amount to cover the cash call defaults and notified MRI that ASARCO would commence

all appropriate action if tender was not accepted within five business days. MRI did not accept,[2] and ASARCO filed this suit.

The complaint alleges that MRI's failure to accept the tender constituted a breach of contract, along with other claims that accrued prebankruptcy. MRI initially filed a motion to dismiss based on ASARCO's lack of standing to prosecute claims postbankruptcy, judicial estoppel, and res judicata. The district court held that all undisclosed claims that existed during the bankruptcy or that were not specifically scheduled postbankruptcy were barred on standing, estoppel, or res judicata grounds.

All was not lost for ASARCO, though, because the district court also ruled that none of these doctrines could bar the breach of contract claim that arose from the postbankruptcy tender and demand for reinstatement. For judicial estoppel and standing, the court reasoned that the breach of contract claim did not exist during bankruptcy, as the demand for reinstatement and tender had not yet occurred. For res judicata, the court held that the breach of contract was a new claim, unrelated to the other claims for coercive relief in the adversary proceeding. The court also concluded that the dropped request for declaratory relief concerning the right to reinstatement filed during the adversary proceeding did not have preclusive effect.

Following discovery, MRI filed a motion for summary judgment, again arguing lack of standing, judicial estoppel, and res judicata. It also asserted a limitations defense. The district court rejected those procedural defenses. MRI also raised the principal merits issue: whether the partnership agreement

---

[2] Although MRI acknowledges the existence of a reinstatement provision, it reads that provision as allowing reinstatement under different scenarios than the one that led to ASARCO's dilution. This is because, MRI contends, to allow reinstatement after dilution would allow the defaulting partner to take the sweet without the bitter; the defaulting partner could let its partner cover the cash calls while business was bad, only to step back into the partnership when business was booming.

allows ASARCO's attempted reinstatement. The court concluded that question could not be decided as a matter of law because of ambiguity in the reinstatement provision and inconclusive extrinsic evidence. The court was, however, able to grant summary judgment on another merits question that greatly weakened ASARCO's attempted reinstatement: assuming there is a right to reinstatement, the court held it only allows ASARCO to regain the 1.23% interest it held before the final default.

Even that 1.23% interest in the mine must have significant value as MRI has pressed full speed ahead in challenging the district court's refusal to dismiss the entire case.[3] After the district court certified its rulings on estoppel and res judicata for interlocutory appeal, MRI successfully obtained permission from this court to appeal.[4] *See* 28 U.S.C. § 1292(b).

## II.

We turn first to MRI's contention that ASARCO's breach of contract claim is barred by res judicata, which is more descriptively known as claim preclusion. The district court held that it was not, a determination we review de novo. *Matter of Baudoin*, 981 F.2d 736, 739 (5th Cir. 1993). The crux of MRI's argument is that ASARCO could have brought its current breach of contract claim alleging a failure to reinstate during the adversary proceeding, so it is barred from doing so now.

ASARCO did seek a declaratory judgment in that adversary proceeding on the main issue the current case raises: whether the partnership agreement provides ASARCO with a right to reinstatement if it tenders the missed cash

---

[3] Of course, ASARCO would be able to appeal the determination that reinstatement allows it to regain only that small percentage after a final judgment. As it did not seek interlocutory review we do not consider that question.

[4] The district court had certified its earlier ruling on the motion to dismiss for interlocutory appeal, but we declined to hear an appeal at that time.

calls.  ASARCO voluntarily dismissed that claim prior to obtaining a ruling, however, so issue preclusion does not apply.  Because that declaratory judgment was part of the prior case MRI is invoking for claim preclusion, the parties focus their attention on *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530 (5th Cir. 1978).  That opinion by Judge Rubin is the seminal decision on the res judicata effect of declaratory judgment claims.  In that pre-Federal Circuit era, this court determined the preclusive effect of a suit seeking a declaration of patent invalidity and noninfringement on a later infringement action.  Because the earlier declaratory action settled without the court deciding the issues it raised, issue preclusion was not available although the court recognized that the doctrine would normally apply when a court makes a declaration of rights.  *Kaspar Wire*, 575 F.2d at 537 ("Under the usual rationale of issue preclusion, there is no reason to permit the relitigation of any issue actually litigated and necessary to the judgment rendered in such an anticipatory declaratory action.").

But the nature of declaratory actions led the court to conclude that the related but distinct doctrine of claim preclusion should not apply.  Claim preclusion of course bars a party from relitigating the same claim that has been resolved in an earlier suit.  What gives claim preclusion far-reaching force, however, is that it also bars claims that could have been brought in the earlier suit.  *Id.* at 535 ("Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial.").  Therein lies the problem with applying the doctrine to declaratory judgment actions.  The whole point of a declaratory judgment action is to decide only a single issue in a dispute, one that is often preliminary as subsequent events will need to occur before a traditional lawsuit can be pursued.  Parties would be deterred from using that

6

efficient process if it would bar all later claims arising out of the same dispute. *See id.* at 537; *Harborside Refrigerated Servs., Inc.. v. Vogel*, 959 F.2d 368, 373 (2d Cir. 1992) ("To permit res judicata to be applied in such a case beyond the precise issue before the court would subvert the very interests in judicial economy that the doctrine was designed to serve."). Another reason claim preclusion is not a good fit for declaratory actions is that defendants can assert them by raising "anticipatory" defenses. *Kaspar Wire*, 575 F.2d at 536. *Kaspar Wire* explains the inappropriateness of ordinary claim preclusion rules in this context as their application would mean a patent "infringer could extinguish a patent holder's claim for infringement by suing for declaratory relief and then voluntarily dismissing the suit with prejudice." *Id.* *Kaspar Wire* also notes that the Declaratory Judgment Act contemplates that a declaration of rights will often be followed by a party seeking additional relief in the form of damages or an injunction. *Id.* at 537 (citing 28 U.S.C. § 2202).

*Kaspar Wire* was assessing the preclusive effect of a prior suit that did not seek those additional equitable or legal remedies; the only claim was one seeking declaratory relief. That is not our case, because in the adversary proceeding ASARCO pursued claims seeking monetary relief—breach of contract, fraudulent transfer—in addition to the request for declaratory relief it later dismissed. Since *Kaspar Wire*, courts have addressed this situation when the prior lawsuit involved both a claim for declaratory relief and one or more claims seeking damages or other coercive relief. *Mandarino v. Pollard*, 718 F.2d 845 (7th Cir. 1983), concluded that the *Kaspar Wire* exception did not apply to a claim for injunctive relief that was coupled with a request for declaratory relief arising from the same claim. It reasoned that when coercive claims are added to declaratory actions, "the policy underlying the declaratory judgment exception must give way to the policy underlying traditional res

judicata principles, namely, 'to protect defendants and the courts from a multiplicity of suits arising from the same cause of action.'" *Id.* (quoting *Gasbarra v. Park-Ohio Indus., Inc.*, 655 F.2d 119, 121 (7th Cir. 1981)). And in *Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Co.*, 503 F. Supp. 2d 699 (S.D.N.Y. 2007), *aff'd*, 600 F.3d 190 (2d Cir. 2010), the court held that a claim for breach of contract had preclusive effect despite being combined with a request for declaratory relief. 503 F. Supp. 2d at 704. In such a situation the lawsuit is no longer one seeking solely a ruling on a preliminary legal issue before devoting the resources of "full-blown" litigation; a claim for breach of contract that happens to also include a request for declaratory relief on the same claim "cannot be characterized as anything other than a 'full-scale legal contest.'" *Id.* Applying the *Kaspar Wire* exception in that situation would give a party another go at the breach of contract claim, multiplying litigation and squandering judicial resources in the process. *See id.*; *see also Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 164 (4th Cir. 2008); *Allan Block Corp. v. Cty. Materials Corp.*, 512 F.3d 912, 917 (7th Cir. 2008).

*Kaspar Wire* and these later cases thus establish the following principle: when it comes to claim preclusion, a request for declaratory relief neither giveth nor taketh away. The declaratory claim on its own typically will not preclude future claims involving the same circumstances (as noted, issue preclusion may still apply to any declaration the court issues). But in a case involving both declaratory claims and ones seeking coercive relief, the former will not serve as an antidote that undoes the preclusive force that traditional claims would ordinarily have. This is why, despite all the ink in this case discussing *Kaspar Wire*, it ends up largely being a sideshow. The declaratory judgment claim asserted and then dismissed in the adversary proceeding does

8

not have preclusive effect.  But the traditional claims for damages asserted in that case are subject to regular claim preclusion analysis.

That analysis finds preclusive effect when: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013).

ASARCO contests the final three requirements, but we need only address the last because we conclude that it is not satisfied.  We use a transactional test to answer the "same claim" question, barring the new claim if it arises from the same nucleus of operative facts as the prior claims.  *N.Y. Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000).  MRI argues that the breach of contract claim could have been brought in the adversary proceeding because ASARCO could have tendered the cure money then.  That would have resulted in MRI rejecting the cure, just as it did when that offer was made after the bankruptcy. ASARCO could have then brought as part of the adversary proceeding a contract claim for MRI's failure to reinstate.  The parties debate whether ASARCO had the means to make the tender during its bankruptcy.  The speculative nature of that inquiry reveals that MRI's theory is too far removed from what actually occurred.  Breach of contract claims generally cannot be brought until the breach occurs.  *See Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 756 (5th Cir. 1996) (holding claim preclusion did not apply because the latter claim did not accrue until after the first proceeding concluded).  At the time of the adversary proceeding, ASARCO had not tendered the cure and MRI had not rejected it.  Additional events needed to take place before the breach of contract claim could be asserted.  The current contract claim thus does not arise from the same facts

as the claims asserted in the adversary proceeding as it depends on events that took place later.

MRI responds that courts have nonetheless applied preclusion when the party asserting the earlier claims had control over the reasons the claim was not brought in the first case. But the cases it cites involve situations in which the material facts for the claims had already occurred; the plaintiff just failed to abide by procedural rules in not bringing these claims in the first proceeding. In *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309 (5th Cir. 2004), for example, we barred plaintiffs from bringing a second Title VII discrimination suit arising from events related to the discriminatory acts alleged in an earlier Title VII suit. 383 F.3d at 314. They argued that although the conduct alleged in the second suit happened before they filed the first one, they could not have asserted the claims in the earlier suit because they had not cleared the procedural hurdle of exhaustion with the EEOC. In rejecting this argument, the panel emphasized that the operative facts alleged in the second case had occurred before the first lawsuit was filed. The plaintiffs thus could have also alleged that conduct in the first suit and sought a stay of those claims pending receipt of a right-to-sue letter from the EEOC. *Id.* at 314–16.

That is unlike this case, in which the facts that spurred the present breach of contract claim—MRI's denial of ASARCO's cure—had not occurred at the time of the prior suit. The other cases cited by MRI involve the *Davis* scenario when the facts giving rise to the claim occurred before the prior proceeding. *See, e.g.*, *Murry v. GSA*, 553 F. App'x 363, 365–66 (5th Cir. 2014) (applying res judicata when discrimination alleged in plaintiff's Title VII claims occurred before the first proceeding, but plaintiff voluntarily split the claims into two successive actions); *Nilsen v. City of Moss Point*, 701 F.2d 556, 563 (5th Cir. 1983) (en banc) (applying res judicata when plaintiff's successive

section 1983 claim relied on the same facts as her earlier Title VII claim and thus could have been brought together). The plaintiffs in these cases did not control the underlying facts of their claims—as MRI asserts—but instead controlled whether they complied with the procedure necessary to pursue their claims.

Another way to think about this is that in all of the cases just cited, the claim asserted in the later suit had accrued at the time of the first suit that did not include the claim—that is, the statute of limitations began running on the discrimination claims in *Davis, Murry*, and *Nilsen* prior to the filing of the first suit. But ASARCO's claim for failure to reinstate did not accrue until MRI rejected the tender in 2011. "If the purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)) (alteration in original). This rule from *Lopez* accurately describes the facts as they were during the bankruptcy proceeding; ASARCO may or may not have attempted to cure, and MRI may or may not have denied ASARCO's reinstatement. Because the present breach of contract claim was contingent on future events, ASARCO could not have brought it during the adversary proceeding. The district court was thus correct in holding that ASARCO is not precluded from bringing the claim now.

## III.

That brings us to ASARCO's other bankruptcy court conduct that MRI argues is a bar to this lawsuit: its alleged failure to disclose the existence of the right to reinstate it now invokes. MRI contends this amounted to conduct worthy of judicial estoppel, which "is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *In re Superior*

11

*Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004).  The purpose of the doctrine is to protect the integrity of the courts, not to protect litigants.  *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012).  In the bankruptcy context, estoppel is appropriate when a debtor "fails to disclose an asset to a bankruptcy court, but then pursues a claim . . . based on that undisclosed asset."  *Id.* at 261–62.  Potential causes of action are assets that must be disclosed.  *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999).  This circuit has not adopted any firm rules regarding the amount of disclosure required beyond the guiding principle that "the integrity of the bankruptcy system depends on full and honest disclosure" by debtors and that "it is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible."  *Id.* (internal quotation omitted).  We review the district court's rejection of an estoppel defense for abuse of discretion, including a review to determine that the discretion was not founded on erroneous legal conclusions.  *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008).

MRI is correct that nowhere in its bankruptcy disclosure did ASARCO Master or its parent explicitly disclose a partnership interest in the mine, or a right to reinstatement.  The closest either came was in Schedule G, where ASARCO Master listed an interest in a "Joint Venture Agreement" under its disclosure of all executory contracts.  But that was somewhat contradicted by ASARCO LLC's Statement of Financial Affairs, where it listed the alleged interest but described the partnership as "dissolved."  MRI asserted that these disclosures were inadequate and show that ASARCO intentionally concealed its alleged interest in the partnership to ensure the interest would survive the bankruptcy proceeding, only to resurrect the interest in this suit.

The district court disagreed.  It emphasized that the purpose of the disclosure requirement is to protect creditors, as it maximizes the value of the

estate to ensure that creditors are paid as fully as possible. To that end, the district court noted that all creditors were paid in full, and the trustee was undoubtedly aware of the partnership contract because it filed the adversary proceeding with claims derived from the partnership agreement. Ultimately, it found that the disclosure of the interest, though scant, was sufficient. The district court's decision to not apply judicial estoppel was within the discretion we afford it in this fact-intensive area.[5]

## IV.

Finally, MRI asserts that even if ASARCO can evade claim preclusion and judicial estoppel, the right to reinstatement did not make it through the bankruptcy because the provision was an executory contract neither assumed nor rejected at bankruptcy. Executory contracts that are not assumed or rejected "ride through" the bankruptcy "unaffected by the bankruptcy proceedings." *In re O'Connor*, 258 F.3d 392, 405 (5th Cir. 2001). But MRI argues that the ride-through doctrine does not apply to executory contracts in default, which is how it characterizes ASARCO's alleged right to reinstatement.

The district court did not rule on this question though. Indeed, it had not yet decided whether the reinstatement provision is an executory contract or a nonexecutory option contract. Unlike executory contracts, nonexecutory contracts—like option contracts—are just assets or liabilities that must be disclosed along with other interests; they are not subject to assumption, rejection, or the ride-through doctrine. *See CHS, Inc. v. Plaquemines Holdings,*

---

[5] MRI also argues that ASARCO should have disclosed that it had a potential breach of contract claim, not just that it had a partnership interest in the contract. But MRI cites no case requiring a party to disclose a potential claim for breach of contract when the contract had not yet been breached. This makes sense, because MRI's position would require a debtor to scour its contracts looking for hypothetical claims that another party could maybe breach in the future.

*LLC*, 735 F.3d 231, 239 (5th Cir. 2013) (noting, in a different context, that option contracts are assets in bankruptcy); *see also In re Digicon, Inc.*, 71 F. App'x. 442, at \*5–6 (5th Cir. 2003). As the district court did not decide whether the reinstatement provision was an executory or option contract, it did not list that issue—or whether a defaulted executory contract rides through a bankruptcy—in its order certifying the case for interlocutory appeal.

"[W]e *may* address all issues material to the order in question and are not limited to the 'controlling question[s] of law.'" *Wheeler v. Pilgrim's Pride Corp.*, 536 F.3d 455, 457 (5th Cir. 2008), *rev'd en banc on other grounds*, 591 F.3d 355 (5th Cir. 2009).[6] As the "may" indicates, whether to do so is a matter of discretion. *See* 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3929 (3d ed. 2012) ("The court *may*, however, consider any question reasonably bound up with the certified order . . . .") (emphasis added).      It makes sense to not opine on the complex ride-through issue in this interlocutory appeal because—in contrast to the claim preclusion and estoppel issues we have decided that would have ended this litigation if decided in MRI's favor—the district court may later decide that the reinstatement provision is an option contract, rendering our musings unnecessary. To decide a question that may not be necessary to resolution of the case would be at odds with the efficiency concerns that underlie limited interlocutory review. *Cf. Ducre v. Exec. Officers of Halter Marine, Inc.*, 752 F.2d 976, 983 n.16 (5th Cir. 1985) (noting that courts should be inclined to address questions not listed in the certification order "when the issues outside the 'controlling question' provide grounds for reversal of the entire order"). We

---

[6] *Wheeler* noted that "some Circuits have held that we are 'obliged to address the order that was certified rather than the controlling question of law framed by the district court,'" but nonetheless framed our ability to do so as a "may" rather than a "must." 536 F.3d at 457 (quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 187–88 (3d Cir. 1986)).

No. 16-40682

leave it to the district court to decide in the first instance the nature of the provision and whether, if it is executory, the ride-through doctrine applies.

\* \* \*

The district court's denial of MRI's motion for summary judgment on preclusion and estoppel grounds is AFFIRMED.