[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12094
Non-Argument Calendar
_____

D.C. Docket No. 0:16-cv-62775-RNS

SEMINOLE TRIBE OF FLORIDA,
a Federally recognized Indian Tribe,

                                                      Plaintiff - Appellant,

versus

LEON M. BIEGALSKI,
as Executive Director of the Department of Revenue,
State of Florida,

                                                      Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 7, 2018)

Before MARTIN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

The question in this appeal is whether the doctrine of claim preclusion bars the Seminole Tribe of Florida (the "Tribe") from again challenging the imposition of a Florida state tax on utility services, which the Tribe uses to conduct on-reservation activities that are regulated by federal law. Concluding that the requirements of claim preclusion have been met and that no exception to the doctrine applies, we affirm the district court's dismissal with prejudice of the Tribe's complaint.

## I. Background

### A. The Tribe's First Challenge to the Utility Tax

#### 1. Initial District Court Proceedings

The Tribe is a federally recognized Indian tribe with multiple reservations in Florida. In 2012, the Tribe filed a federal civil action ("*Seminole I*") seeking declaratory and injunctive relief against Marshall Stranburg, the then-interim Executive Director of Florida's Department of Revenue, complaining that Florida's tax "on gross receipts from utility services that are delivered to a retail consumer" (the "Utility Tax"), *see* Fla. Stat. § 203.01(1)(a)(1), was being applied to the Tribe in violation of federal Indian law.[1] The Tribe specifically sought (1) a judgment

---

[1] The Tribe also challenged a tax that applied to commercial rent payments. The district court granted summary judgment in favor of the Tribe, and we affirmed that ruling on appeal. *Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324, 1328–29 (11th Cir. 2015). We omit any further discussion of the rental tax because it is not relevant to the issues before us in this appeal.

declaring that utility services provided to the Tribe on tribal land are not subject to the Utility Tax and (2) a permanent injunction precluding the imposition or collection of the Utility Tax on utility services provided to the Tribe on tribal land.

After conducting limited discovery, the parties filed cross-motions for summary judgment.  In its motion, the Tribe argued that the Utility Tax was invalid for two reasons: (1) it violated the Constitution's Indian Commerce Clause, U.S. Const., Art. I, § 8, cl. 3, because the legal incidence of the tax fell on the Tribe; and (2) even if the legal incidence of the tax fell on the utility service provider, the Utility Tax was "invalid to the extent that it is applied to utility services that are used in any on-reservation activity of the Tribe whose regulation is preempted by Federal law." The Tribe noted that it used "electricity in connection with many on-reservation activities whose regulation is preempted by Federal law," including the provision of various essential government services, the leasing of Indian Land, and Indian gaming.  The Tribe argued that, under the balancing test prescribed by *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980), the Utility Tax was invalid because it burdens activities whose regulation is preempted by Federal law.

The district court entered summary judgment for the Tribe.  The court agreed with the Tribe that the Utility Tax was invalid because the legal incidence of the tax fell on the Tribe, not on the utility company.  As a result, the court declined to

3

address the Tribe's alternative arguments that the tax was impermissible under a *Bracker* preemption analysis.  Stranburg appealed.

## 2.   Decision on Appeal

On appeal, we reversed the district court's Utility Tax ruling, holding that the legal incidence of the tax fell on the non-Indian utility company, not the Tribe. *Seminole Tribe of Florida v. Stranburg*, 799 F.3d 1324, 1351–52 (11th Cir. 2015). We therefore considered whether, under *Bracker*, federal law preempts imposition of the Utility Tax on non-Indian utility companies operating on-reservation.  *Id.* at 1352.  Ultimately, we held "that the Utility Tax does not violate federal law."  *Id.*

Explaining that preemption is essentially a question of congressional intent, we concluded that the federal and tribal interests at stake were not "sufficient to establish that the exercise of the state's taxing authority here violates congressional intent."  *Id.*   In particular, we discerned "no pervasive federal interest or comprehensive regulatory scheme covering on-reservation utility delivery and use sufficient to demonstrate a congressional intent to preempt state taxation of a utility provider's receipts derived from on-reservation utility service."  *Id.*

Further, we rejected the Tribe's argument that the tax was preempted because the Tribe uses electricity in connection with various activities whose regulation is preempted by federal law, including the provision of essential government services, leasing of Indian land, and Indian gaming.  The problem with the Tribe's argument,

4

we explained, was that it ignored the "particularized" and "flexible" nature of the *Bracker* inquiry, which is "sensitive to the particular state, federal, and tribal interests involved." *Id.* (quoting *Bracker*, 448 U.S. at 145). We stated that, in contrast to the fuel tax at issue in *Bracker*, the Tribe had not introduced evidence of a substantial federal interest in regulating Indians' utility use specifically. *Id.* at 1352–53. Instead, "the Tribe essentially expresses a generalized desire to avoid the Utility Tax." *Id.* at 1353. But "the Tribe cannot demonstrate congressional intent to preempt a specific state tax by bundling up an assortment of unrelated federal and tribal interests tied together by the common thread of electricity use." *Id.* Because the Tribe did not "develop further argument with respect to electricity use in specifically regulated on-reservation activities," we concluded that it had not established that Florida's Utility Tax was generally preempted as a matter of law. *Id.* Accordingly, we reversed the district court's judgment with respect to the Utility Tax and "remanded to the district court for proceedings consistent with this opinion." *Id.*

In footnote 22 of the decision, we elaborated on the Tribe's failure to "develop further argument with respect to electricity use in specifically regulated on-reservation activities":

> The Tribe's brief contains a non-exhaustive list of activities it asserts are "exclusively and pervasively regulated by federal law," including police and fire protection, land leasing, and gaming, along with references to associated federal statutes. But the Tribe has failed to

5

demonstrate that the existence of these statutes represents an exclusive or pervasive federal regulation of those activities. Accordingly, we are not in a position to conduct particularized inquiry with respect to each specific activity listed. **But we offer no opinion on whether, if properly framed, the Tribe may be able to demonstrate that the Utility Tax is preempted with respect to some or all of the specific activities it has listed**.

*Id.* at 1353 n.22 (emphasis added).

### 3.    Proceedings on Remand

Stranburg moved for entry of judgment on remand. The Tribe objected and, relying on footnote 22 of our decision, maintained that we had remanded for the district court "to conduct the 'particularized inquiry' into 'specifically regulated on-reservation activities' required by *Bracker*." In the Tribe's view, although we had held that the Utility Tax was not "generally preempted" on Tribal lands, we "expressly left open the issue of whether the tax, as applied to *specific* activities on Tribal lands, would be preempted." The Tribe listed fourteen specific activities for the district court to analyze.

The district court sided with Stranburg and concluded that our mandate precluded further consideration of the issues advanced by the Tribe. The court reasoned that, in light of our unambiguous holding that the Utility Tax "does not violate federal law," the qualification in the footnote was a minor limitation on the reach of the holding in a future case, not an instruction to conduct further analysis on remand. In addition, the court noted, allowing further evidence would contradict

6

our "long-held stance against allowing parties to present new arguments on remand that were previously available." The Tribe could not, in other words, "present new arguments with the benefit of the Eleventh Circuit's analysis because its previous evidence was rejected."

The district court further explained that, even if it had the discretion to allow the Tribe to present new arguments, it would decline to do so. The court stated that "these issues were before the Court and the Eleventh Circuit" on cross motions for final summary judgment. But at no point did the Tribe raise the specific preemption arguments that it presented on remand. Because the Tribe decided to "present its *Bracker* arguments in a specific manner," the court stated, "[i]t cannot now escape the consequence of that choice." The district court entered judgment against the Tribe on its Utility Tax claim on September 30, 2016.

B.    *The Tribe's Second Challenge to the Utility Tax*

Rather than appeal the district court's order on remand, the Tribe filed a new civil action ("*Seminole II*") against Leon Biegalski, Stranburg's successor as the Executive Director of Florida's Department of Revenue, again seeking declaratory and injunctive relief with regard to the Utility Tax. Seeking to advance the specific issues that we had "offer[ed] no opinion on," *Seminole Tribe*, 799 F.3d at 1353 n.22,

7

the Tribe contended that the Utility Tax was preempted with respect to fourteen specific activities that the Tribe uses electricity to conduct.[2]

Biegalski moved to dismiss the complaint with prejudice based on the doctrine of claim preclusion. Biegalski argued that the Tribe had already lost on its claim that the Utility Tax was preempted by federal law and that it could not evade application of the doctrine of claim preclusion simply by presenting alternative arguments in support of that same claim.

The Tribe responded that claim preclusion did not apply. In the Tribe's view, this Court interpreted the complaint in *Seminole I* as presenting two separate issues: (1) whether "Federal law generally preempts the Utilities Tax on all utility services delivered to and used by the Tribe on Tribal Land as a matter of law"; and (2) whether "Federal law preempts the Utilities Tax on utilities services to the extent that those services are used to conduct specific activities that are exclusively and pervasively regulated by Federal law." Doc. 18 at 6 (emphasis omitted). For ease of reference, we will refer to the first of these issues as the "general preemption" issue and the second as the "specific preemption" issue.

---

[2] These activities included the following: law enforcement; education; medical, health and fire-rescue services; family and youth counseling; waste and sanitation management; road construction and maintenance; housing; culture preservation; land leasing; forestry and wildlife management; agriculture and livestock grazing; rock mining; Indian gaming; and gaming-related activities.

Relying on that distinction, the Tribe maintained that *Seminole I* and *Seminole II* did not involve the same cause of action because the specific preemption issue in *Seminole II* did not arise from the same nucleus of operative fact as the general preemption issue in *Seminole I*. Without citing any direct support in the case law, the Tribe asserted that "[c]laims for prospective declarations to resolve purely legal issues" never arise out of the same nucleus of operative fact because they do not require the court to resolve any facts. Instead, according to the Tribe, "[c]laims for declarations to prospectively resolve purely legal issues are governed by collateral estoppel, or issue preclusion." And because the specific preemption issue was not decided in the prior action, in the Tribe's view, it was not barred by issue preclusion and the district court could address it in *Seminole II*.

Alternatively, the Tribe contended that the only fact in common between the two cases—that the Tribe uses utility services on tribal land—was not sufficient to apply claim preclusion. Finally, the Tribe contended that even if *Seminole I* and *Seminole II* involved the same cause of action, it would be manifestly unjust to apply claim preclusion when "no Court has ever determined whether the specific activities listed in the complaint are exclusively and pervasively regulated by Federal law and would therefore preempt State taxation."

The district court granted Biegalski's motion to dismiss. Accepting the Tribe's apparent contention that *Seminole I* concerned the general preemption issue

9

while *Seminole II* concerned the specific preemption issue, the court nonetheless concluded that both cases involved the same claim or cause of action. The court determined that three different methods of analysis each supported the conclusion that the cases involved the same claims.

First, the district court found that *Seminole I* and *Seminole II* were based on the same factual predicate, since "every single one of the fourteen particular activities listed by the Tribe in its second complaint is encompassed by the broader allegations presented in *Seminole I*." Doc. 41 at 5. Second, the court reasoned that the primary right and wrong asserted were the same, since in both cases the Tribe claimed the right to be free from the imposition of Florida's Utility Tax on electricity provided to the Tribe in connection with activities alleged to be exclusively regulated by federal law. Third, the Court determined that the Tribe could have raised the *Seminole II* arguments in *Seminole I*, since the activities and relevant laws appeared to be identical in both cases. Finally, the court rejected the Tribe's manifest-injustice argument, doubting whether such an exception exists but concluding that it would not apply even if it did because the Tribe had an opportunity to raise the specific preemption issue in *Seminole I* or appeal the district court's order on remand.

The Tribe filed a motion to alter or amend, *see* Fed. R. Civ. P. 59(e), asserting several errors in the district court's ruling. According to the Tribe, the district court had (1) mischaracterized the Tribe's claim as set forth in *Seminole I*;

10

(2) misinterpreted our opinion in the Tribe's appeal of that case; (3) misapplied the test for determining whether the claims in *Seminole II* were the same as those in *Seminole I*; and (4) incorrectly denied the "manifest injustice" exception.

Central to the Tribe's argument that claim preclusion did not apply was its contention that "the Tribe requested the same declaration in *Seminole I* that it requested in this case, but this Court and the Eleventh Circuit elected not to address it." Doc. 43 at 2. That requested declaration, the Tribe explained, was that "Federal law preempts Utilities Tax to the extent it is applied to electricity used to conduct specific activities that the Tribe claims to be exclusively and pervasively regulated by Federal law." *Id.* at 3 (emphasis in original). But that claim "has never been adjudicated," in the Tribe's view, because our decision on appeal in *Seminole I* declined to address it and the district court improperly refused to consider it on remand. *Id.* The Tribe reasoned that, because the claim was never resolved, there was not a final judgment on the merits as to that claim and so it was not barred by claim preclusion. *See id.* at 2 ("Claim preclusion does not bar claims that were asserted in a prior action but which the court elected not to address.").

The district court denied the Tribe's motion. If the Tribe was correct that it requested the same declaration in both cases, the court explained, "then undoubtedly the same causes of action" were at issue in both cases. And, according to the court, those claims were fully litigated and resulted in a judgment on the merits: "The

11

Eleventh Circuit fully reviewed the record, subjected the Tribe's presentation to a *Bracker* analysis, and then determined the Tribe failed to make its case that the utility taxes at issue were preempted—to any extent." The Tribe now appeals.

## II.  Standard of Review

We review the district court's application of claim preclusion *de novo*. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999).

## III.  Discussion

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion "forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Id.* (quotation marks omitted). Issue preclusion, in contrast, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* (quotation marks omitted).

Both doctrines are designed to "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). They do so by precluding

12

parties from contesting matters they have had a full and fair opportunity to litigate. *Id.*

Ordinarily, claim preclusion applies if all four of the following elements are present: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Ragsdale*, 193 F.3d at 1238. Where claim preclusion applies, it precludes relitigation not only of "the precise legal theor[ies] presented in the prior case, but [of] all legal theories and claims arising out of the same nucleus of operative fact." *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 893 (11th Cir. 2013) (quoting *NAACP v. Hunt*, 891 F.2d 1555, 1561 (11th Cir. 1990)).

The Tribe offers three main reasons why, in its view, claim preclusion does not apply to bar *Seminole II*. First, the Tribe argues that, under the declaratory-judgment exception to claim preclusion, the preclusive effect of a judgment in an action seeking a declaration to prospectively resolve purely legal issues is governed by the doctrine of issue preclusion, not claim preclusion. Second, the Tribe maintains that claim preclusion does not apply because the "purely legal issues" presented in *Seminole II* were also presented in *Seminole I* but both this Court and the district court "expressly refrained" from resolving them, so there was no final judgment on the merits of the same claim or cause of action. Finally, the Tribe

13

asserts that it would be manifestly unjust to apply claim preclusion to bar claims that both we and the district court refrained from resolving.  We address each argument in turn.

A.    *The Declaratory Judgment Exception to Claim Preclusion Does Not Apply*

We first address the Tribe's argument that the ordinary principles of claim preclusion do not apply because of the declaratory-judgment exception.  Under the declaratory-judgment exception, the preclusive effect of a prior action solely for declaratory relief is limited to the "matters declared" and to "any issues actually litigated . . . and determined in the action."  Restatement (Second) of Judgments § 33; *see Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 196 (2d Cir. 2010).  In other words, the preclusive effect of a prior declaratory proceeding ordinarily is governed by issue preclusion, not claim preclusion.  *Empire Fire & Marine Ins. Co. v. J. Transp., Inc.*, 880 F.2d 1291, 1296 (11th Cir. 1989); *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 537 (5th Cir. 1978)[3]; *see* Restatement (Second) of Judgments § 33, comment c ("[A] declaratory action determines only what it actually decides and does not have a claim preclusive effect on other contentions that might have been advanced.").

---

[3] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

The res-judicata exception for declaratory judgments stems from the limited scope of declaratory actions.  "The purpose of declaratory actions is to supplement other types of litigation by providing 'a remedy that is simpler and less harsh than coercive relief.'"  *Mandarino v. Pollard*, 718 F.2d 845, 848 (7th Cir. 1983) (quoting Restatement (Second) of Judgments § 33, comment c); *see ASARCO, L.L.C. v. Montana Res., Inc.*, 858 F.3d 949, 955 (5th Cir. 2017) ("The whole point of a declaratory judgment action is to decide only a single issue in a dispute, one that is often preliminary as subsequent events will need to occur before a traditional lawsuit can be pursued."); *Harborside Refrigerated Servs., Inc. v. Vogel*, 959 F.2d 368, 373 (2d Cir. 1992) ("Declaratory relief enables federal courts to clarify the legal relationships of parties before they have been disturbed thereby tending toward avoidance of full-blown litigation.").  That purpose would be thwarted if parties to an action for declaratory relief were required to bring "all possible claims and counterclaims."  *Harborside*, 959 F.2d at 373 (stating that the application of claim preclusion to actions for declaratory relief would "subvert the very interests in judicial economy that the doctrine was designed to serve"); *ASARCO*, 858 F.3d at 955 ("Parties would be deterred from using that efficient process if it would bar all later claims arising out of the same dispute.").

Limiting the preclusive effect of a declaratory proceeding to the issues decided also ensures that parties can later seek supplemental relief in the form of

15

damages or an injunction.  *See Kaspar Wire*, 575 F.2d at 536–37 (reasoning that claim preclusion is not appropriate because a plaintiff, after obtaining a declaratory judgment, generally "may seek further relief in the form of damages or an injunction").    Additionally, as our predecessor court noted in *Kaspar Wire*, declaratory actions may be brought by parties raising anticipatory defenses to a potential suit for damages or injunctive relief.  575 F.2d at 536.  Such a declaratory-judgment plaintiff is, therefore, not asserting a "claim" to a remedy but rather "an anticipatory defense to a potential claim."  *See id.*

The Tribe argues that the declaratory-judgment exception, and therefore issue preclusion, applies because it sought "a declaration to prospectively resolve purely legal issues."  But the Tribe cannot rely on the declaratory-judgment exception in this case because it sought coercive relief in the prior action.

"Federal courts have consistently held that the declaratory judgment exception applies *only* if the prior action *solely* sought declaratory relief."  *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 164 (4th Cir. 2008) (emphasis added); *Allan Block Corp. v. Cty. Materials Corp.*, 512 F.3d 912 (7th Cir. 2008) ("[T]here is an exception to res judicata for cases in which the *only* relief sought in the first suit is a declaratory judgment." (emphasis added)); Restatement (Second) of Judgment § 33, comment c (stating that the declaratory judgment exception applies where the "plaintiff seeks *solely* declaratory relief" (emphasis added)).  When coercive relief

16

is sought, the action is more akin to traditional, full-blown litigation than it is to the limited and often preliminary nature of actions solely for declaratory relief.

Accordingly, where plaintiffs have combined a request for declaratory relief with claims for monetary or injunctive relief, federal courts have consistently refused to apply the declaratory-judgment exception. *ASARCO*, 858 F.3d at 956 ("[I]n a case involving both declaratory claims and one seeking coercive relief, the former will not serve as an antidote that undoes the preclusive force that traditional claims would ordinarily have."); *Duane Reade*, 600 F.3d at 196 ("[T]here were claims other than those for declaratory relief and . . . those claims had the effect of disqualifying this case from the declaratory judgment exception."); *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008) ("Because Giannone's State Action sought injunctive relief as well as a declaratory judgment, he may not avail himself of the 'declaratory judgment exception' to the doctrine of res judicata."); *Laurel Sand & Gravel*, 519 F.3d at 164 ("Laurel sought both declaratory relief and an injunction against enforcement and implementation of the Dewatering Act. Thus, the declaratory judgment exception is inapplicable."); *Cimasi v. City of Fenton, Mo.*, 838 F.2d 298, 299 (8th Cir. 1988) ("[W]here a party seeks declaratory relief as well as affirmative relief through a coercive remedy, the [declaratory judgment exception] does not apply." (citation omitted)); *Minneapolis Auto Parts Co., Inc. v. City of Minneapolis*, 739 F.2d 408, 410 (8th Cir. 1984) ("[C]laim preclusion applies

when coercive relief is sought and granted in the first suit."); *Mandarino*, 718 F.2d at 848–49 ("Mandarino's pursuit of injunctive relief in his state court action would remove him from the protections of the [declaratory judgment exception].").

We follow the (overwhelming) weight of authority and conclude that the declaratory-judgment exception does not apply in this case because the Tribe sought coercive relief—a permanent injunction precluding further imposition or collection of the Utility Tax on utility services provided to the Tribe on tribal land—in *Seminole I*. We find no support in the case law for the Tribe's assertion that a request for coercive relief does not preclude reliance on the declaratory-judgment exception where the request does not "require the determination of any facts." The Tribe identifies no case, and we have not found one, in which a court applied the declaratory-judgment exception notwithstanding a request for coercive relief in the prior action. Accordingly, we conclude that the prior judgment carries claim-preclusive effect assuming, of course, it meets the ordinary requirements. We turn now to those requirements.

B.     *The Ordinary Elements of Claim Preclusion Have Been Met*

The Tribe concedes that two of the four elements for applying claim preclusion are met here: the parties are identical and the district court had jurisdiction to render a decision in the prior action. But the Tribe contends that the other two elements of claim preclusion—whether the earlier judgment was a final judgment

18

on the merits and whether the cases involve the same causes of action—are not satisfied here.  The Tribe is wrong on both counts.

The Tribe's admission—adamance, in fact—that it presented the "same purely legal issues" in both *Seminole I* and *Seminole II* is fatal to its argument that the cases do not involve the same causes of action.  *See, e.g.*, Reply Br. at 11 n.6 ("In both cases, the Tribe asked the district court to determine whether the scope of the federal regulation of various specific activities is exclusive and pervasive and therefore preempts the application of the Utilities Tax to electricity the Tribe uses to conduct the activity.").  Our own review of the record supports the Tribe's assertion.  At the summary-judgment stage in *Seminole I*, the Tribe argued that the Utility Tax was "invalid to the extent that it is applied to utility services that are used in any on-reservation activity of the Tribe whose regulation is preempted by Federal law."  It then advanced that same argument on appeal, arguing that the Utility Tax was preempted to the extent it was applied to various specific activities because those activities were subject to exclusive or pervasive federal regulation.  *See Seminole Tribe*, 799 F.3d at 1353 & n.22.  And that same contention—that the Utility Tax was preempted with respect to those same activities—formed the basis of the complaint in *Seminole II*.

Thus, not only could the Tribe have raised its *Seminole II* claims in *Seminole I*, but those claims were in fact raised in the earlier proceeding.  *See Davila v. Delta*

*Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003) (claim preclusion "pertains not only to claims that were raised in the prior action, but also to claims that could have been raised previously" (citation omitted)); *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990). There is no basis, in other words, to conclude that the "causes of action" at issue in both cases were anything other than the same.[4]

That leaves the final element of a "final judgment on the merits." *Ragsdale*, 193 F.3d at 1238. The Tribe argues that there was not a final judgment on the merits of its *Seminole II* claims because our decision on appeal in *Seminole I* resolved the general preemption issue only but, in the Tribe's view, "expressly refrained" from addressing the specific preemption issue. The Tribe reasons that "claim preclusion does not apply to bar any claim that was asserted in the prior proceeding, but which the court refrained from addressing, because, in those circumstances, the final judgment did not resolve the claim on its merits." Because the *Seminole II* claims have never been resolved, the Tribe maintains, claim preclusion does not bar them from being asserted in this action.

However, the Tribe is incorrect that no judgment was rendered on the merits of the *Seminole II* claims. True, we did not conduct the "particularized" *Bracker* inquiry with respect to each of the specific activities listed by the Tribe in its brief

---

[4] The Tribe's argument that the same causes of action were not involved in both cases appears to stem from the premise that we did not address the issues raised in *Seminole II* in the appeal from *Seminole I*. For the reasons explained herein, we disagree with that premise.

20

on appeal and now raised in *Seminole II*. *See Seminole Tribe*, 799 F.3d at 1353 n.22. For that reason, we sought to make clear in footnote 22 that we expressed no opinion on how that inquiry would play out if "properly framed." *Id.* But the fact that we did not conduct the full *Bracker* analysis with respect to each of the specific activities does not make our decision any less one on the merits of those claims for purposes of claim preclusion. *See Lobo*, 704 F.3d at 892 ("The Stewards' contention that a judgment on the merits occurs only when the rendering court has addressed the substance of every claim to be later precluded is baseless.").

The basis for our refusal to conduct the *Bracker* inquiry was not that we simply declined to do so, that it was not at issue in the case, or that we lacked jurisdiction to consider it. *Cf. Davila*, 326 F.3d at 1188 (a dismissal for lack of subject-matter jurisdiction "plainly is not an adjudication on the merits"). Rather, it had to do with the substantive deficiencies in the Tribe's arguments. We explained that the Tribe, in arguing that the Utility Tax was "preempted because the Tribe uses electricity in connection with various activities whose regulation is preempted by federal law," had "ignore[d] the nature of the *Bracker* inquiry," which was "particularized" and "flexible." *Seminole Tribe*, 799 F.3d at 1352.

Because the Tribe had failed to "develop further argument with respect to electricity use in specifically regulated on-reservation activities," we were not in a position to conduct particularized analysis with respect to each activity listed. *Id.* at

21

1353 & n.22. Although the Tribe had cited various federal statutes regulating these activities, we stated that the Tribe had "failed to demonstrate that the existence of these statutes represents an exclusive or pervasive federal regulation of those activities." *Id.* at n.22. In other words, we determined that the Tribe's arguments did not establish that the specific activities the Tribe listed, which are the same activities at issue in *Seminole II*, were exclusively and pervasively regulated by federal law. Because our decision rested on "the substantive shortcomings in [the Tribe's] arguments," it "can only be considered a decision on the merits." *Davila*, 326 F.3d at 1189.

Furthermore, on remand, the district court rejected the Tribe's attempt to raise the specific preemption issue and entered final judgment on the Tribe's claims. In doing so, the court explained that, even if it had the discretion to allow the Tribe to present more specific *Bracker* arguments, it would decline to do so because "these issues were before the Court and the Eleventh Circuit" on cross motions for final summary judgment but the Tribe had not presented the arguments it sought to raise on remand. The district court's refusal to consider arguments that it found were within the scope of the earlier proceeding further supports our conclusion that there was a final judgment on the merits of the *Seminole II* claims. *Cf. King v. Hoover Grp., Inc.*, 958 F.2d 219, 222–23 (8th Cir. 1992) ("It is well settled that denial of

22

leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading.").

Accordingly, the Tribe's claim that "[a] judgment has no preclusive effect with respect to any claim the court refrained from addressing," Reply Br. at 10, which may be true as far as it goes, simply does not apply to the circumstances here. The Tribe had a full and fair opportunity to litigate its preemption challenge to the Utility Tax as applied to specific on-reservation activities. *See Shurick v. Boeing Co.*, 623 F.3d 1114, 1117 (11th Cir. 2010) ("[C]laim preclusion operates to prevent parties from contesting matters that they have had a full and fair opportunity to litigate between themselves . . . ." (quotation marks omitted)). As we have explained, we found that challenge wanting. *Seminole Tribe*, 799 F.3d at 1353 & n.22.

Despite the minor limitation on our holding, as reflected in footnote 22 of the decision, the Tribe cannot now, armed with better evidence and more refined arguments, relitigate its challenge to the Utility Tax. *See Taylor*, 553 U.S. at 892 ("a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit" (quotation marks omitted)). The fact that we recognized possible merit in the Tribe's position had it been "properly framed" is not a license for the Tribe to relitigate a claim that it had a full and fair opportunity to litigate. The Tribe cannot escape the doctrine of

23

claim preclusion "by asserting its own failure to raise matters clearly within the scope of a prior proceeding." *Underwriters Nat'l Assurance Co. v. N. Car. Life & Acc. & Health Ins. Guar. Ass'n*, 455 U.S. 691, 710 (1982).

To the extent there was error in the prior action, that does not affect the preclusive consequences of the judgment. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."). If the Tribe believed that we had misinterpreted the declaration it sought in *Seminole I*, it could have requested reconsideration on that basis. But it did not. If the Tribe believed that the district court had misinterpreted our mandate on remand or otherwise erred, it could have appealed the district court's order refusing to consider the specific preemption issue. But it did not. The Tribe cannot now collaterally attack the prior final judgment "by bringing another action upon the same cause [of action]." *Id.* (quotation marks omitted).

In sum, the Tribe had a full and fair opportunity to litigate its claim that the Utility Tax was preempted to the extent it was applied to the specific activities the Tribe claims are exclusively and pervasively regulated by federal law. The final judgment on the merits in *Seminole I* precludes the Tribe from "relitigating issues that were or could have been raised in that action." *Moitie*, 452 U.S. at 398.

24

Accordingly, the district court properly concluded that the doctrine of claim preclusion barred the Tribe's complaint in *Seminole II*.

## C.    It is Not "Manifestly Unjust" to Apply Claim Preclusion

Finally, we address the Tribe's argument that the application of claim preclusion in this case would be manifestly unjust.    The Supreme Court "has cautioned against departing from accepted principles of res judicata."    *Griswold v. Cty. of Hillsborough*, 598 F.3d 1289, 1294 (11th Cir. 2010).    But the application of claim preclusion is not purely mechanical, *Maldonado v. U.S. Att'y Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011), and the Court has recognized that the requirements of due process may limit the application of claim preclusion, *Richards v. Jefferson Cty. Ala.*, 517 U.S. 793, 797 (1996).

Assuming a manifest-injustice exception exists, we agree with the district court that there is nothing unjust about the application of claim preclusion in this case.  As we have explained above, the Tribe had a full and fair opportunity to litigate its challenge to the Utility Tax and could have advanced its more specific arguments in the first action.  Because the Tribe has already had its day in court, it cannot now continue to litigate its challenge with the benefit of our analysis of the shortcomings of its earlier arguments.

## IV.  Conclusion

25

For the reasons explained above, we conclude that the declaratory judgment exception to claim preclusion does not apply, that the ordinary elements of claim preclusion have been met, and that it would not be manifestly unjust to apply claim preclusion in this action.  Accordingly, we affirm the district court's dismissal with prejudice of the Tribe's complaint.

**AFFIRMED.**